vs. Birchfield. And we'll just give a few minutes for counsel to change and the courtroom to settle down. We're going to wait just a second. All right. And we'll go ahead and get started. We'll hear first from Ms. Walker. Thank you and good morning. My name is Marion Walker and I represent the appellants David Birchfield and Melissa McDickinson who are urging this court to reverse and render the assault and battery verdict as well as the punitive damages verdict, or alternatively, the punitive damages verdict, as well as finding that there is no prevailing party for cost shifting in this case in light of the court's case of first impression, Royal Palm, and other cases, finding that there is not a prevailing party. But Royal Palm was a bit different, right? I mean, in Royal Palm, the parties that were involved there, there were two parties, the parties were against each other, the same parties for all of the claims. Here, that's not the case. We have the claims that Ms. Gray has against Mr. Birchfield and Ms. McDickinson and then the claims against Coke Foods, the Coke Foods entities, right? Right, and so, I mean, and because, and then those cases could have been broken out separately, right? I mean... Oh yes, we're not objecting to the fact that there are costs assessed against Ms. Gray on behalf of Coke Foods who had a complete verdict. Our position is that the court refused to look at the fact that the appellants won four times to Ms. Gray's two. And we contend there is, as between the appellants and Ms. Gray, no prevailing party for shifting costs. And particularly when we advocate... But didn't she obtain money judgment against her clients? She did. However, that is two of four other claims that she brought against them. And so, in the question of cost... In the end, the relationship, the legal relationship between your clients and Ms. Gray changed, did it not? I mean, they are required now to pay a certain amount in damages to Ms. Gray, isn't that right? That is correct, yes. All right. And she is not required to pay anything to them, right? That is correct. All right. And so, why isn't she a prevailing party? Because there also are four other claims that they are not required to pay, despite the fact that she insisted they should pay for four other claims that they won. They were defendants and prevailed. If Ms. Gray wins only one claim, but she brought six others, at the end of the day, under CRST and under Royal Palms' concept, I understand that there were just two parties in Royal Palm, but the concept here is that there sometimes is no prevailing party because the defendant can also win. It is true that there is sometimes no prevailing party. I was actually on the Royal Palm panel. And it is true that there is sometimes not a prevailing party. But sometimes what you have are situations where each side wins a claim and gets some kind of damages or whatever. That is a case where there might not be a prevailing party. Here, your clients won nothing. They got nothing from Ms. Gray. Ms. Gray, however, got a verdict against them on the state charges and also got a punitive damages verdict against them. And that relationship, that legal relationship, changed. That is, under the law, they now owe her a certain amount of money. There is no legal obligation that she has against them for any of the other claims. So I need a little help in understanding why you think it is that there should be no prevailing party when that is the circumstance here. It is simply this, that under the Supreme Court's opinion in CRST, the concept is that the defendant has an obligation to go in and defend claims that the plaintiff brings. And these defendants did that. And they prevailed on four of those claims, meaning they succeeded in not changing the legal relationship, which is a win as compared to her win on assault and battery. And that is the premise that we are advancing as to why there is no prevailing party in the case for shifting costs. And the court has talked about assessing costs because of Rule 41 and dismissal of counterclaims. Right, but isn't, under the case law, isn't one of the things about whether or not you're a prevailing party, it's not that you just have a resolution, but that you also have to be afforded and awarded some relief on the merits? Well, in terms of a defendant, you are awarded relief when you have rebuffed the claim. According to my reading of CRST, and Royal Palm cited that case for that very principle, that the defendant is entitled to a win when they rebuff a claim that the plaintiff has brought. Otherwise, the defendant never wins. But, of course, they did on four different claims. And that's why we're looking at it in terms of a balancing is that we acknowledge she prevailed. However, we are here urging the court to reverse those verdicts for lack of sufficiency of the evidence. There was a counterclaim by McDickinson and Birchfield for damage to their reputation and defamation. And the jury found for McDickinson and Birchfield. So, is one of your arguments that you prevailed on that? If she's entitled to cost, you ought to be entitled to cost on the counterclaim? Well, actually, Judge, we dismissed the counterclaims prior to trial with prejudice. Okay. And that was one of the issues that the judge is holding essentially as a penalty under Rule 41 that we should pay cost of the counterclaim, which the plaintiff has said they can't really separate out from other costs of the case. They took 11 claims to trial after that. So, there was no additional cost that they had to incur. In fact, they had a win. They didn't have to pursue that claim and defend it in court. And she claims a win on that as a counter-defendant. Okay. So, it's the same principle. But we contend that the court did not have sufficient evidence to submit the case to the jury and it can't be sustained. With David Birchfield, they have not been able to show any intent on his part to touch Ms. Gray. He said he wanted to kiss her. When she turned around, their lips brushed. There is no testimony from her to the effect that he intended for the lips to brush. None at all. That is the only time she's accused of touching him. The court and Ms. Gray have taken the record and imposed facts that are not there. For instance, there's no evidence that he was squeezing her with Ms. Dickinson. She said sandwich, but she has never said that he was pressing against her. As a matter of fact, the last page of the transcript, her lawyer said you didn't want him to be close to you. Nothing is touching her other than the lip brush. There's no evidence of hostility in any touch that took place that night. Alternatively, in looking at the punitive damages verdict, there's a clear and convincing standard that requires evidence, such probative evidence. It's the highest standard in the law. And yet, there's, by Ms. Gray's own testimony, no evidence of hostility, no anger. There certainly was no conscious or deliberate wantonness. And we found, on appeal, for the first time, as Gray alleges, that Ms. Dickinson and Mr. Birchfield conspired. There's no allegation of conspiracy until this brief. To say that they planned to have her over there and make sexual advances when there's no evidence of that at all. In the record, according to Ms. Gray. Well, okay. I mean, the evidence is that, and the jury could have, a reasonable jury could have found, because we have to look at the verdict in the light most favorable to, and we have to look at the evidence in the light most favorable to the verdict. A reasonable jury could have found that they invited her over there under a pretext of work, and there was no work being done. Then there's dancing in the garage and alleged sexual overtures by the two of them. And so, why couldn't a reasonable jury conclude that the two of them had decided to have her over there under, you know, for the purpose not of work, but of engaging in sexual overtures? Primarily because, Your Honor, she knows from the beginning that they discussed a little bit of work. I said, why did you stay? I don't know. I just didn't leave. Secondly, Ms. MacDickinson, she says, put her hand on her knee, and she removed it. Ms. MacDickinson, she said, said, I am attracted to you. And in the first 15 minutes, she understood that there's no more work discussed, and now Ms. MacDickinson has an attraction to her, and she stays there. She never complains. She never says stop. She never says no until the very end when she's asked for sex, and she says no. She was not powerless. She's staying there the whole time, and in a matter of seconds is when this touching she complained of took place. And they are the people that she would have to report harassment to. I mean, isn't that right? He's the head of HR, and she's his assistant. I mean, it kind of puts her in a rough position, right? Well, I understand the concept there, Judge, but her supervisor was available to her, and he is in Cumming, Georgia, and she never complained to him, and she knew she could. All right. Thank you. All right. Let's hear from Ms. Barlott. Is that right? I don't know. Ah, okay. Ms. Leonard. Thank you. We do have an interesting posture here, so thank you for setting me straight. Okay. Your Honor, my name is Heather Leonard, and along with Charles Greer, we represent appellee, cross-appellant Katoria Gray. I want to address briefly the position brought by appellants Birchfield and McDickinson before moving on to our cross-appeal arguments. The district court noted in its summary judgment opinion, which is docket entry 415 on page 23, that it believed this harassment was a coordinated, simultaneous assault by two HR managers, and it believed these two HR managers crossed almost every physical and emotional boundary towards their subordinate to have group sex with them. It is not a new concept to say that the two highest-ranking human resources employees ever, Katoria Gray, conspired to put her in a position that she would have to submit to a sexual act. That has been the argument that has been the through theme throughout this case from the beginning, and the jury, in hearing that evidence, reached that conclusion as it came to the assault and battery claims, as well as the punitive damages claim. This evidence showed malice or willful intent to cause Ms. Gray harm by putting her in that situation. The record adequately supports the jury verdict. As it relates to our cross-appeal, there's... On the incident that took place at McDickinson's home, where they sandwiched between her and they wanted to dance, is there anything else? They wanted to have sex with her. Okay. They promised her for sex. They asked her for sex. They took Ms. Gray's hand and placed it on her breast. It is not... And she removed it? Touched her thigh, that she said, virtually pressed up against her on the back, kissed her, an unwanted kiss, all in the context of trying to get her to engage in a sexual act with them. Okay. Now, there's a photograph in the record of Gray kissing... Was it McDickinson? Before all this happened. That photograph is an interesting piece of evidence, Your Honor. Ms. Gray disputes the accuracy of that photograph. And this is one of those that it kind of remains a mystery. Let's remember that Mr. Birchfield says he was not there. This photograph was produced in discovery by whom? Birchfield and McDickinson. Someone had to take this photograph. Ms. Gray testified that Mr. Birchfield tried to take a photograph of them. She did not want it taken, so she turns her face. She says she is not kissing McDickinson in that photograph. The angle at which it takes makes it appear that way. And this photograph is also important and kind of goes to the whole idea that they knew what they were doing. There was testimony from Steve Jackson, who was there that night, that McDickinson and Birchfield would frequently take photographs of these types of liaisons with other employees, so they would essentially have evidence to use against them down the road to either keep them quiet or to get them to do what they want to do. So you said the photograph is inaccurate. Gray is not kissing Mc... She's not kissing him? That was her testimony, that she was not kissing. She postulated it could potentially have been Photoshopped to make it appear closer, but she says the photograph is her turning her head and that her lips did not touch McDickinson's face. And that is evidence which the jury heard. Since the briefing in this case, last year in the spring, the United States Supreme Court came out with its decision to... Okay, let me go back to the photograph again. And so the photograph, it was in evidence at the trial? Yes, Your Honor. Okay, and Ms. Gray explained it away? That was the evidence that the jury heard, that the testimony advanced by McDickinson was that the photograph showed... Gray's testimony was Birchfield took the photograph, she may have been altered, but that she turned her head to avoid having her face full on in the picture and that that's what it captured.  What did the jury believe? The verdict was in Ms. Gray's favor, so I think that that is indicative that they gave more credibility to Ms. Gray's version of events than the way McDickinson and Birchfield described it. But all we have is the jury's verdict on that piece of paper, so your guess is as good as mine. Now, my planet's heart keeps trying to drive my way all the way over to Muldrow, and that's where I'm driving right now. We believe that the decision in Muldrow means that as it relates to the tangible job action harassment claims brought by Ms. Gray, the court's decision granting summary judgment on that should be reversed. And if that occurs, then it may moot our extensive discussion of Royal Palms and there can be a one Highlander approach to a prevailing party. So I want to start with Muldrow and its impact on the tangible job action claim. In the court's summary judgment opinion, the court acknowledges that the plaintiff was pursuing a tangible job action theory of sexual harassment, but then rejects that theory, ultimately saying that on docket 415, pages 35 through 36, that Gray can only point to changes in supervision in a disciplinary memo as tangible employment actions, but those act pale and significant to those typically recognized as sufficient. So the court then goes on to say this is really a hostile environment claim that culminates in a constructive discharge and does not go down the tangible job action analysis. And like the holding in Muldrow, we believe the appropriate approach for this court would be to reverse that finding and remand it to the district court to determine if those two acts, which then proceed for separation of employment, do rise to the type of tangible job actions that would permit that type of claim. We also see within that in Muldrow that's consistent with the finding in Muldrow, which rejects the significant element in order to determine if there has been an adverse action. That was the language on which the district court relied in coming to that conclusion. Instead, the court in Muldrow said that you need to show some disadvantage to or change in the employment terms or conditions. Here we absolutely have that. Gray has been resisting the advances of Burchville and McDickinson, both on the dancing night or the night in the garage, as well as later when McDickinson calls her into her office, is not wearing a bra and exposes her breasts under the guise of saying she has a sunburn. During this time, they repeatedly reach out to Gray to try to get her to come be alone with them. Let me just ask you a question. I think what you're arguing is that they're inconsistent verdicts, right? Not on this point, Your Honor. This is the summary judgment point. All right. The court should have allowed the tangible job action, sexual harassment. All right, but here's the thing. If you don't win on the jury part, right, the trial part, then hasn't this issue already effectively been decided by the jury? No, Your Honor, because the case would have been presented differently, and that is one of the issues is the jury instructions that the jury got on the claim that they heard were intertwined with the language that harkens back to a significant change of employment. It would have been a different trial and a different case had that tangible job action claim been permitted to go to the jury because part of the theory of that, of the tangible job action claim, is Gray is resisting their pursuit of her and their efforts. So what do they do? They then move her under their supervision, which makes it difficult for her to resist those efforts. She goes from reporting to the safety director in Cumming, Georgia, to now reporting to Dickinson, who is the HR manager at the D-Bone plant and who is under the supervision of the complex HR manager, Birchfield. She goes there. They invite her to go to the beach. She says no. They then issue a disciplinary memorandum to her. This is significant because the night that she is called to their house when they proposition her for group sex, they call her there under the guise of saying, we want to talk about Betty Stabler and what to do about Betty Stabler. And they essentially suggest to her at that meeting that they can get rid of Betty Stabler essentially by starting a pattern of write-ups. So when Gray gets moved under their supervision and sees this write-up, she sees the writing on the wall and sees what's coming. By having her change in supervision from someone who is not sexually harassing her or pursuing her to someone who is, that's a material change in her employment that under Muldrow would be the type of change that we would see. And it's even the type of change that's anticipated in the authority that was cited by Cook Foods Council in its letter brief. If you can give me one second, I'm sorry. Because there is that change that was cited in Pennsylvania State Police v. Sutter. They're one of the things that you look at to determine if there is a tangible job action harassment is if there's an actual action by the employer that precedes the employee leaving. This isn't just a case where she says the harassment is so bad I have to escape. It's the harassment is bad, you have now changed my employment by moving me under my harasser who has now subsequently issued me a disciplinary memorandum when I wouldn't go be alone with her at the beach. The only thing that Gray had left her at that point was to remove herself from the situation. Which brings up the delicious dichotomy between the positions taken by Cook Foods and its appeal and the position taken by Birchfield and McDickinson. On the one hand, you have Birchfield and McDickinson saying she wasn't bothered by this, if she was bothered by this she would have tried to remove herself. Which is exactly what she did once she was moved under their supervision material change in her employment and then disciplined by them. Rather than sit there and suffer additional attacks or assaults on her in an effort to get her to concede to sexual conduct she removes herself from the situation because that's what a reasonable person would do. They would not leave themselves in a position where things would escalate even further. Based on Muldrow, this court should reverse and remand the tangible job action and send that back for the court's analysis. If the court does that, then it effectively moots the issue of whether there's a prevailing party or whether Cook Foods and Gray can both be prevailing parties. If the court does not moot that issue, then under Royal Palms the court still should send back the issue of the cost award for the district court to determine who is the prevailing party. As this court recognized in Royal Palms there can be no prevailing party or there can be one prevailing party. Royal Palms was a different situation. All the parties were in the same boat with respect to all of the claims. And so, yes, in that situation there could be only one prevailing party. In this case, we've got claims, we've got counterclaims, we've got different results with respect to different parties. And as a result, your client could have separately sued the Coke entities if it wanted to. And in that case, if we had had the same result, the Coke entities would be entitled to prevailing party status. Isn't that right? That would have been for the court's determination whether they were a prevailing party. There wouldn't be any reason why they couldn't be prevailing parties. Correct. So why should that change simply because these cases are effectively consolidated for the purpose of convenience? The primary reason comes from Judge Wilson's opinion in Royal Palms. When you look at the text of Rule 54D, it says the prevailing party. It speaks in the singular. Mr. Brewer and I talked about this at length under some of the scenarios. This is kind of a mess. And he had a suggestion that I'm hesitant to make in front of judges. But at the same time, he said this is a problem. And federal judges serve on the Rules Committee. And the language in the rule leads us to the outcome that we're in right now. The language in the rule does not anticipate multiple prevailing parties. And that was the crux of this court's opinion in Royal Palms was focusing on the specific language of Rule 54D. And that's the problem that we're left with. Again, in all candor, based on this situation, my plan on filing cases very differently in the future would be to have that language absent a change in the rule. But this court, unless the rule is changed, is bound by that language. And that's how this court came to its determination in Royal Palms. Again, Royal Palms was a different factual situation. And we've said that our cases can only bind us as far as the factual pattern in the case. We've said that. I've said that, Your Honor. And the language, though, of Rule 54D still only anticipates a singular prevailing party. So under these circumstances, it would make sense to send it back to the district court for resolution of that issue. But it talks about an inaction. And when we talk about inaction, you know, the rule there was amended for the purpose of trying to distinguish from when we used to have sort of different equitable filings and other things to say there's only one form of action. Right? And so if you take, for example, a class action case, I mean, it's essentially a bunch of individual cases that are all together, but we call it inaction. But it's a bunch of individual cases. But, you know, when it comes to figuring out damages in a class action case, for example, you would, if different plaintiffs receive different awards and some get none, you might find that there's a prevailing party with respect to some of them, but not with respect to other ones. And all individual cases together, I mean, I don't see how it makes sense to suggest that the rule confines you to a single prevailing party in every possible situation when we're talking about what's effectively consolidation for convenience purposes and efficiency purposes. Yes, please. That's why I'm asking about it. Respectfully, the dicta in Royal Palms clarifies Rule 54D has no special rule or exception for mixed judgment cases. And I think that this is a problem that's created by a lack of precision in the... Mixed judgment cases is different than, so mixed judgment cases are different, right, than what we're talking about. We're talking about cases where there are really effectively more than one case in inaction, right? A mixed judgment case is a case where one party wins some of the claims and one party wins the other claims. Or nobody wins. Or nobody wins, right? So, right. So that's a mixed judgment case. I'm not sure that gets you where you need to be. I'm all in, Your Honor. And again, if you relax on the analysis within Royal Palms, I get it doesn't fit like a glove, but it's the only case really that's closest to the situation that's out there for anyone to look at to address the situation. However, I would remind the Court. If you decide to remand the summary judgment claim, this problem goes away. Alright, thank you so much. And now we'll hear from Ms. Barlotta. Barlotta, thank you. May it please the Court, my name is Rachel Barlotta. I represent Cook Foods of Alabama, LLC. Ms. Gray, the appellant, comes before this Court asking it to reverse three decisions by the District Court that were in Cook Foods' favor. I will address those respectively and in turn in the order that Ms. Gray's counsel addressed them. The first being the Court's ruling on the constructive discharge claim. That ruling is due to be affirmed by this Court for three reasons. First, it's now the law of the case based upon the jury's verdict that Ms. Gray failed to establish that she was subjected to a hostile work environment based upon sex. That is, of course, necessary, is the underlying basis for a constructive discharge claim. If you can't get off first base by proving that you were subjected to a hostile work environment based upon sex, you don't get to constructive discharge. And we cannot ignore the fact that the jury, after 12 days of trial, listening to testimony from more than 16 witnesses and hundreds of documents, reached the decision that Ms. Gray failed to establish that she was subjected to a hostile work environment based upon sex. There is not, from what I could find, a decision in which this particular issue has been presented or ruled upon by this Court. However, we did cite two cases from, one from the Seventh Circuit and one from the Second Circuit, that have encompassed this and said that once a jury makes a finding of fact or other determination that is contingent upon the claim that the party is trying to overturn or trying to press that they lost at summary judgment, it cannot be done. The jury's verdict essentially negates any possible issues of fact that existed at summary judgment. The second reason the trial court's decision on the constructive discharge claim is due to be affirmed is because Ms. Gray failed to present sufficient evidence that her working conditions were so intolerable that a reasonable person would have been compelled to resign. It was undisputed that the alleged misconduct occurred in November of 2016. Ms. Gray did not resign until over five months later in April of 2016. And this Court has recognized that significant gap mitigates against any sort of determination that there existed an intolerable working environment. And I would like to address in particular three factual assertions made by counsel in support of this argument. One being that Ms. Gray was forced to change her reporting structure. That is not in the record. That was not in the record at summary judgment. It wasn't in the record at trial. Not that that necessarily matters, but it was certainly not in the record at summary judgment. What the district court had was an actual audio recording as well as a transcript of the conversation between Ms. Gray and Mr. McDickens and Mr. Birchfield about that. The reason they were having that discussion, and this is undisputed, is because Ms. Gray asked for that meeting to complain about her supervisor, that she did not like reporting to Frank Sheely. That was an undisputed fact. So on Doc 247.4 page 20, Mr. Birchfield asked Ms. Gray, and I quote, I've also got to determine would it behoove Cook Foods to completely reorganize their reporting structure and whether it's Betty reporting and the nurses all report to Melissa and me through this chain of command or companies. What do you think? Her answer was, I mean, I think changing it would help a lot. She also testified in her deposition that she was asked who she wanted to report to. So there's zero evidence that at summary judgment that Ms. Gray was forced to change the reporting structure. In fact, the evidence was that she. She was asked who she wanted to report to and what was her answer? And well, in the transcript, she she told Mr. Birchfield with a asked her, would it help you to report to us? And she said, I think it would help me. So I think that is a response to her saying that she wanted to report. She agreed and wanted to report to them. The other assertion that's made by Ms. Gray repeatedly throughout her brief and recently and was that there was an invitation to go to the beach and that it occurred in April shortly before she resigned. There is zero testimony in the record that that invitation occurred in April. Ms. Gray's testimony on that point was that. And this is what they cited to Ms. Gray cited to in her brief. She could only say this about this alleged invitation. It was after November 14th, 2015 and before April 19th, 2016. She had and then was asked, was there anything that would refresh her memory so she could pinpoint that? And she said no. And so but now on appeal, they're presenting that is that the record is is that she was asked to go to the beach in April. Right before resignation, there's no record support of that. The final issue is that they argue supports a finding of constructive discharge was that she was written up and write up was false. Not just that she was written up, but that it was a false write up. But Ms. Gray told the EEOC in her charge, her sworn charge, that she was absent and that she was tardy, which is why she was written up. The only issue she took with the write up was where it said that she had failed to notify her supervisor in advance that she was going to be off. But again, Ms. Gray did not dispute that she did not notify her supervisor. She notified another non-managerial HR employee. But there is no evidence in the record that at the time Ms. Dickinson issued the write up that she had any idea that Ms. Gray had allegedly notified anybody else at the plant that she was not going to be there. And that's critical, right? Because Ms. Gray is arguing that this was retaliatory because and it was retaliatory because they were making things up about her. It was false. And there is no evidence in the record at summary judgment to support that that write up was in any way false at the time it was issued. In fact, to the contrary, Ms. Gray reported to the EEOC that she did not dispute that she was late, that she was absent, and that disciplinary action was warranted in that situation. The other reason that the court's decision is due to be affirmed is because Ms. Gray herself admitted that before she resigned that the harassment had ceased. I asked her in her deposition why she would go to the people who she claimed were harassing her to complain about Frank Sheely, her supervisor, harassing her. And she said to me, well, because at that time the harassment had stopped. So we have her own testimony at summary judgment that well before she resigned, she said that the harassment had stopped. We also believe that the judgment is due to be affirmed on the alternative ground that Ms. Gray did not ever exhaust her administrative remedies on the constructive discharge claim. She filed an EEOC charge while she was still employed at Cook Foods. She had not been terminated. Yet after when she did resign, she filed a second charge and never mentioned that she felt like she was forced to resign. All she said was, I resigned. And she pointed out things that had to do with the nursing board and that never went to trial before this court this morning. But needless to say that she never put that issue before the EEROC and there was no evidence presented at summary judgment by Ms. Gray that the EEOC's investigation included that charge. And we had the FOIA records. Those were provided to the Court and cited in evidence and there was nothing put into the EEOC actually investigated and considered the constructive discharge claim. So therefore, the trial court's ruling... Well, I mean, it's really the same. It's based on the same alleged conduct. I don't think there's a... I mean, just speaking for myself, I don't think that there's a problem there with the exhaustion issue. But if you want to try to convince me otherwise, I'm open. I mean, I might have missed something. The Supreme Court has said that a constructive discharge is a discrete act. And a discrete act has to be... you have to file. Yes, but... It's based on all of the things that she had previously told us. And the whole purpose of the exhaustion requirement is so that there aren't any unfair surprises or, you know... To the defendant. And so there wouldn't be. It would be the exact same investigation that you're conducting. So it seems to me like there's not an exhaustion problem here, especially based on our precedent. And perhaps there was evidence in the record that the EEOC had actually done that, but there wasn't. And again, it was a discrete act, one which an employee is obligated to file an EEOC charge under Supreme Court and this Court's precedent. I will now turn to the other issue that Ms. Gray has argued, and that is that the District Court erred in refusing her motion to grant a new trial. And that decision is also to be affirmed by this Court for two reasons. One is that because Ms. Gray failed to move for a directed verdict, she must show, then, that there was no evidence that supported the jury's verdict on the hostile work environment claim. And for this Court to make that determination, she would have needed to file the entire trial transcript, which, of course, she did not. The only portions of the trial transcript were ordered by McDickinson and Birchfield. It was limited to six witnesses when they, in fact, were 16. So this Court cannot make a determination that there was no evidence presented at the trial that supported the jury verdict because we don't have all the evidence. Even if Ms. Gray, however, was not required to provide the entire transcript, the Court's decision denying Ms. Gray's motion for a new trial is also due to be affirmed because there certainly was evidence that supported the jury's verdict, that she was not subjected to workplace harassment based upon sex. We know that Ms. McDickinson and Ms. Birchfield denied the allegations. We know the testimony from Mr. Jackson also did not support the way that Ms. Gray said that things happened. There was ample testimony that whatever happened there that night had no connection to the workplace or to cooked foods. And so, even from the few witnesses or portion of the trial that is before the Court, there was ample evidence to support the jury's verdict. As this Court astutely pointed out, what, in fact, Ms. Gray is arguing is that it was an inconsistent verdict. But she cannot argue that because that was waived. In order to have argued that the verdict was inconsistent, she would have needed to, before the jury was discharged, drop it back to the attention of the District Court, which she did not do. So she could not press that issue on appeal. And it's probably why she's not pressed it on appeal and has instead argued it as a weight of the evidence issue. But given the tremendous amount of deference that is due to a District Court on this particular decision, particularly when a District Court is denying a motion for a new trial, that this Court would have to find, again, that there was no evidence that supported the verdict. And given the level of deference that the District Court is due on this particular issue, that ruling must be affirmed. I will just really briefly address, in the time I have left, the Muldrow issue. That, of course, had involved a discriminatory transfer. And whether or not the plaintiff in that case had to show a significant level of harm, and the Supreme Court said they did not. The tangible employment action analysis that the District Court employed in this case comes straight from the Burlington Industries, Eller's opinion, in terms of the way that an employee can hold an employer liable for Title VII hostile work environment claims. That tangible employment action language comes straight out of the Supreme Court's decision in Burlington. And that was not, in any way, overruled by the Supreme Court's more recent decision in Muldrow. And, in fact, what the District Court said was, well, you don't have tangible employment action harassment here, so Cook Foods can present a fair group defense, but it certainly didn't prevent Ms. Gray from presenting her constructive discharge claim. What prevented her from presenting her constructive discharge claim to the jury was her inability to produce sufficient evidence that the working conditions were so intolerable that a reasonable person would have been compelled to resign. So, as the Court has further questions, I will conclude. All right. Thank you, Ms. Barlotta. And, Ms. Walker, you've reserved three minutes. Please, Court. On this issue of conspiracy, it was Mr. Jackson who wanted to invite and did invite Ms. Gray to come over to the garage that night late on a Saturday night after she'd worked seven hours. She did not want to go. We admit that until Ms. McDickinson said, oh, yes, come on. Her evidence, Mr. Jackson's unrefuted evidence is they had been singing in the garage and drinking for a long time. So they talked to her as she left work at 1145 at night. She was asked by Mr. Jackson, bring some cocaine if you can. She knew where she was going to a social gathering, which she did go to. There's no evidence that there is some plan or some entrapment that Birchville and McDickinson have planned because Jackson is the one who wanted to invite her over. The problem is the jury heard all this evidence and rejected your client's position. That's true. So isn't that a problem for you? The problem is, of course, you can give a jury a claim, and they can be inflamed by that gay social act that she testified oral sex occurred. Was that the basis of punitive damages? We don't know, do we? But very likely it could be an invitation to sex on its own is not an assault and battery. And the invitation to sex followed any... But there was evidence in the record beyond that she had an invitation to sex. I mean, she alleged that there was unwanted touching, that she was sandwiched between Mr. Birchville and Ms. McDickinson, that there was touching by Ms. McDickinson, that there was a kiss by Mr. Birchville. The jury could choose to believe that. I mean, I understand that your client's position is that they shouldn't have believed it. But why couldn't the jury... Why couldn't a reasonable jury choose to believe that? And if a reasonable jury could choose to believe that, why doesn't that finish the question? Because a reasonable jury with a college-educated nurse is able to say, I'm uncomfortable, don't touch me, stays at a party and continues to participate. She can't remember what took place. And in a matter of seconds is when she says this touching occurred. The sandwiching had to do with her being in between the two of them, not that she was pressed together as Ms. Gray now says. She never testified that under oath, either in deposition or at trial. And so we say the record is clear that he only brushed her lips and accidentally, she's the one who turned to face him. Thank you. All rise.